UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JONATHAN P. ROBICHEAUX, ET AL.          CIVIL ACTION

v.                                       NO. 13-5090 C/W
                                         NO. 14-97 & NO. 14-327

JAMES D. CALDWELL,                       SECTION "F"
LOUISIANA ATTORNEY GENERAL, ET AL.


ORDER AND REASONS

     Before the Court are cross motions for summary judgment.  The
Court finds that defendants in this passionately charged national
issue have the more persuasive argument.  The State of Louisiana
has a legitimate interest under a rational basis standard of review
for addressing the meaning of marriage through the democratic
process.  For the reasons that follow, plaintiffs' motion for
summary judgment is DENIED and defendants' motion for summary
judgment is GRANTED.


Background

     These consolidated cases challenge the constitutionality of
Louisiana's ban on same-sex marriage and its choice not to
recognize same-sex marriages that are lawful in other states.
Plaintiffs include six same-sex couples who live in Louisiana and
are validly married under the law of another state, one same-sex
couple who seeks the right to marry in Louisiana, and the Forum for

1

Equality Louisiana, Inc., a nonprofit advocacy organization. Plaintiffs allege that Article XII, Section 15 of the Louisiana Constitution,[1] which defines marriage as between one man and one woman, and article 3520(B) of the Louisiana Civil Code,[2] which denies recognition of same-sex marriages contracted in other states as being against Louisiana's strong public policy, violate their constitutional rights to Equal Protection and Due Process.[3] They

----

[1] Marriage in the state of Louisiana shall consist only of the union of one man and one woman. No official or court of the state of Louisiana shall construe this constitution or any state law to require that marriage or the legal incidents thereof be conferred upon any member of any union other than the union of one man and one woman. A legal status identical to or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized. No official or court of the state of Louisiana shall recognize any marriage contracted in any other jurisdiction which is not the union of one man and one woman.

La. Const. art. 12, § 15.

[2] A purported marriage between persons of the same sex violates a strong public policy of the state of Louisiana and such a marriage contracted in another state shall not be recognized in this state for any purpose, including the assertion of any right or claim as a result of the purported marriage.

La. Civ. Code art. 3520(B).

[3] Plaintiffs in Case Number 14-97 challenge Article XII, Section 15 of the Louisiana Constitution and Louisiana Civil Code article 3520(B). In their prayer for relief in their complaint, those plaintiffs mistakenly refer to Code article 3520(B)(1), which does not exist, and to Article XII, Section 18 of the Constitution, but elsewhere in the complaint make clear that they mean Section 15. Plaintiffs in Case Number 14-327 challenge "Article XII, Section 15 of the Louisiana Constitution, Article 3520(B) of the

also urge that the Louisiana Department of Revenue Information Bulletin No. 13-024,[4] which requires same-sex couples lawfully married in other states to certify on their Louisiana state income

_____

Louisiana Civil Code, and any other Louisiana laws that purport to deny recognition to the marriages of Plaintiffs and other same-sex couples who are married under the law of another jurisdiction." Although those plaintiffs do not specifically identify the "other Louisiana laws" in their complaint, plaintiffs' supplemental brief submitted on July 16, 2014 requests "declaratory judgment holding that Louisiana Civil Code articles 86, 89, 3520(B), and Article 12, Section 15 of the Louisiana Constitution are unconstitutional...and the Court should enjoin their enforcement." Article 86 of the Louisiana Civil Code, like Section 15 of the Louisiana Constitution, defines marriage as "a legal relationship between a man and a woman." Code article 89, similar to Code article 3520, prohibits purported marriages between persons of the same sex.

[4] The bulletin provides in part:

> In compliance with the Louisiana Constitution, the Louisiana Department of Revenue shall not recognize same-sex marriages when determining filing status. If a taxpayer's federal filing status of married filing jointly, married filing separately or qualifying widow is pursuant to IRS Revenue Ruling 2013-17 [ruling that same-sex couples legally married in states that recognize such marriages will be treated as married for federal tax purposes], the taxpayer must file a separate Louisiana return as single, head of household or qualifying widow, as applicable. The taxpayer(s) who filed a federal return pursuant to IRS Revenue Ruling 2013-17 may not file a Louisiana state income tax return as married filing jointly, married filing separately or qualifying widow. The taxpayer must provide the same federal income tax information on the Louisiana State Return that would have been provided prior to the issuance of Internal Revenue Service Ruling 2013-17.

La. Revenue Info. Bulletin No. 13-024 (Sept. 13, 2013).

tax returns that they are single, violates their First Amendment freedom of speech.  Plaintiffs name Tim Barfield, the Louisiana Secretary of Revenue, Devin George, the Louisiana State Registrar, and Kathy Kliebert, the Louisiana Secretary of Health and Hospitals, as defendants.

The parties have filed cross motions for summary judgment. All issues have been briefed and the Court has held oral argument.[5]

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely

---

[5] Plaintiffs have seemingly abandoned their Full Faith and Credit Clause claim.

4

colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

This national same-sex marriage struggle animates a clash between convictions regarding the value of state decisions reached by way of the democratic process as contrasted with personal, genuine, and sincere lifestyle choices recognition.  The defendants maintain that marriage is a legitimate concern of state law and policy.  That it may be rightly regulated because of what for centuries has been understood to be its role.  Not so say plaintiffs, who vigorously submit if two people wish to enter into a bond of commitment and care and have that bond recognized by law as a marriage, they should be free to do so, and their choice should be recognized by law as a marriage; never mind the historic authority of the state or the democratic process.  These are

earnest and thoughtful disputes, but they have become society's latest short fuse.  One may be firmly resolved in favor of same-sex marriage, others may be just as determined that marriage is between a man and a woman.  The challenge is how and where best to resolve these conflicting notions about what is marriage and what influence should the U.S. Supreme Court decision in United States v. Windsor have?  See 133 S. Ct. 2675 (2013).

## II.

### A.

The Court first takes up the most hefty constitutional issue: Equal Protection.  The Fourteenth Amendment to the Constitution commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  "The Equal Protection Clause...essentially directs that all persons similarly situated be treated alike." Stoneburner v. Sec'y of the Army, 152 F.3d 485, 491 (5th Cir. 1998)(citing City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985)). However, "if a law neither burdens a fundamental right nor targets a suspect class," the Supreme Court has held, "the legislative classification [will survive] so long as it bears a rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620, 631 (1996)(citing Heller v. Doe, 509 U.S. 312, 319-20 (1993)); City of Cleburne, 473 U.S. at 440 ("The general rule is that legislation is presumed to be valid and will be sustained if the classification

6

drawn by the statute is rationally related to a legitimate state interest."). In the Equal Protection joust, a court's standard of review is central to this analysis. At play are three specialized lines of thought: rational basis, intermediate scrutiny, and heightened scrutiny. Rational basis is the least austere; heightened scrutiny the most arduous.

When conducting rational basis review, the Supreme Court has instructed that "we will not overturn such [government action] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." Kimel v. Fl. Bd. of Regents, 528 U.S. 62, 84 (2000)(alterations in original)(internal quotation marks and citation omitted). "In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale seems tenuous." Romer, 517 U.S. at 632 (citations omitted). If, however, heightened scrutiny, the most unforgiving, is warranted, then a law must be "necessary to the accomplishment" of "a compelling governmental interest." Palmore v. Sidoti, 466 U.S. 429, 432 (1984).[6]

---

[6]   All federal court decisions post-Windsor have stricken same-sex marriage bans under all three standards. Bostic v. Schaefer, Nos. 14-1167, 14-1169 & 14-1173, 2014 U.S. App. LEXIS 14298 (4th Cir. July 28, 2014); Bishop v. Smith, Nos. 14-5003 & 14-5006, 2014 U.S. App. LEXIS 13733 (10th Cir. July 18, 2014); Kitchen

Plaintiffs submit that Louisiana's constitutional amendment and Civil Code article violate the Equal Protection Clause by prohibiting same-sex marriage within Louisiana, and by declining to recognize same-sex marriages that are lawful in other states. Plaintiffs argue that the laws are subject to heightened scrutiny analysis because they discriminate on the basis of sexual orientation and gender. Defendants counter that the laws trigger rational basis review, which is satisfied by Louisiana's legitimate interest in linking children with intact families formed by their biological parents, and by ensuring that fundamental social change occurs by social consensus through democratic processes. See Windsor, 133 S. Ct. at 2697 (Roberts, C.J., dissenting)("[F]or it is entirely expected that state definitions would 'vary, subject to

---

v. Hebert, No. 13-4178, 2014 U.S. App. LEXIS 11935 (10th Cir. June 25, 2014); Brenner v. Scott, Nos. 14-107 & 14-138, 2014 U.S. Dist. LEXIS 116684 (N.D. Fl. Aug. 21, 2014); Burns v. Hickenlooper, No. 14-1817, 2014 U.S. Dist. LEXIS 100894 (D. Colo. July 23, 2014); Love v. Beshear, No. 13-750, 2014 U.S. Dist. LEXIS 89119 (W.D. Ky. July 1, 2014); Baskin v. Bogan, Nos. 14-355, 14-404 & 14-406, 2014 U.S. Dist. LEXIS 86114 (S.D. Ind. June 25, 2014); Wolf v. Walker, No. 14-64, 2014 U.S. Dist. LEXIS 77125 (W.D. Wis. June 6, 2014); Whitewood v. Wolf, No. 13-1861, 2014 U.S. Dist. LEXIS 68771 (M.D. Pa. May 20, 2014); Geiger v. Kitzhaber, Nos. 13-1834 & 13-2256, 2014 U.S. Dist. LEXIS 68171 (D. Or. May 19, 2014); Latta v. Otter, No. 13-482, 2014 U.S. Dist. LEXIS 66417 (D. Idaho May 13, 2014); DeBoer v. Snyder, 973 F. Supp. 2d 757 (E.D. Mich. 2014); Tanco v. Haslam, No. 13-1159, 2014 U.S. Dist. LEXIS 33463 (M.D. Tenn. March 14, 2014); De Leon v. Perry, 975 F. Supp. 2d 632 (W.D. Tex. 2014); Lee v. Orr, No. 13-8719, 2014 U.S. Dist. LEXIS 21620 (N.D. Ill. Feb. 21, 2014); McGee v. Cole, No. 13-24068, 2014 U.S. Dist. LEXIS 10864 (S.D. W. Va. Jan. 29, 2014). Contra Sevcik v. Sandoval, 911 F. Supp. 2d 996 (D. Nev. 2012)(applying rational basis to reject an Equal Protection challenge to Nevada's same-sex marriage ban). See United States v. Windsor, 133 S. Ct. 2675 (2013).

constitutional guarantees, from one State to the next.'" (citation omitted)).  Defendants point out that over 30 states choose not to recognize same-sex marriages, and some 20 states haven chosen to recognize same-sex marriages in free and open debate through the democratic process.  Both sides invoke the Supreme Court's decision in United States v. Windsor, 133 S. Ct. 2675 (Kennedy, J., majority opinion).  But Windsor does little more than give both sides in this case something to hope for.

In Windsor, the Supreme Court held that Section 3 of the Federal Defense of Marriage Act (DOMA), which defined marriage as a union between one man and one woman only, violated Equal Protection and Due Process principles when applied to New York state law permitting same-sex marriage.  Id. at 2693.  Observing "DOMA's unusual deviation from the usual tradition of recognizing and accepting state definitions of marriage," the Court inferred that Congress had acted with a discriminatory purpose.  Id.  The Court reasoned, to that point, that "'[d]iscriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision.'"  Id. at 2692 (quoting Romer, 517 U.S. at 633).[7]

---

[7]   Windsor, in the context of the issues presented to this Court, is unclear (contrary to the conclusions in many recent federal court decisions).  It is by its own terms, limited.  Its "opinion and its holding are confined to those lawful marriages." 133 S. Ct. at 2696.  However, Windsor also references an amorphous but alluring "evolving understanding of the meaning of equality." Id. at 2693.  Hence this Court's unease that Windsor merely offers

As to standard of review, <u>Windsor</u> starkly avoids mention of heightened scrutiny.  Plaintiffs' effort to equate <u>Windsor</u>'s elusive phrase "careful consideration" with intermediate or heightened scrutiny seems like intellectual anarchy.  In the past, the Supreme Court considered rational basis as fulfilling the notion of "careful consideration."  <u>See</u> <u>Romer</u>, 517 U.S. at 633-35 (requiring "careful consideration" by applying a rational basis standard of review). If the Supreme Court meant to apply heightened scrutiny, it would have said so.[8]  More importantly, the Court only required "careful consideration" because of Congress' odd intrusion on what the Court repeatedly emphasized was historic and essential state authority to define marriage.  By that same logic, no additional or different consideration is warranted here, where Louisiana is acting squarely within the scope of its traditional authority, as underscored by Justice Kennedy.  <u>See</u> <u>Windsor</u>, 133 S.

---

bits and pieces of hope to both sides.  <u>See</u> <u>also</u> <u>id.</u> at 2696 (Roberts, C.J., dissenting)("The Court does not have before it, and the logic of its opinion does not decide, the distinct question whether the States, in the exercise of their 'historic and essential authority to define the marital relation,'...may continue to utilize the traditional definition of marriage.").

[8]  This Court is not persuaded by the Ninth Circuit's decision to the contrary in <u>SmithKline Beecham Corp. v. Abbott Labs</u>, 740 F.3d 471 (9th Cir. 2014).  Even less explicit regarding the appropriate standard of review are the split decisions in the Tenth and Fourth Circuits.  <u>See</u> <u>Bostic v. Schaefer</u>, Nos. 14-1167, 14-1169 & 14-1173, 2014 U.S. App. LEXIS 14298 (4th Cir. July 28, 2014); <u>Bishop v. Smith</u>, Nos. 14-5003 & 14-5006, 2014 U.S. App. LEXIS 13733 (10th Cir. July 18, 2014); <u>Kitchen v. Hebert</u>, No. 13-4178, 2014 U.S. App. LEXIS 11935 (10th Cir. June 25, 2014).

Ct. at 2693.  Although both sides seek the safe haven of <u>Windsor</u> to

their side of this national struggle, and it is certainly without

dispute that the Supreme Court correctly discredited the tainted

unconstitutional result that DOMA had on democratically debated and

then adopted New York state law blessing same-sex marriages, this

Court finds it difficult to minimize, indeed, ignore, the high

court's powerful reminder in <u>Windsor</u>:

> The recognition of civil marriages is central to state
> domestic relations law applicable to its residents and
> citizens.  See <u>Williams v. North Carolina</u>, 317 U.S. 287,
> 298 (1942)("Each state as a sovereign has a rightful and
> legitimate concern in the marital status of persons
> domiciled within its borders").  The definition of
> marriage is the foundation of the State's broader
> authority to regulate the subject of domestic relations
> with respect to the "[p]rotection of offspring, property
> interests, and the enforcement of marital
> responsibilities." <u>Ibid.</u>  "[T]he states, at the time of
> the adoption of the Constitution, possessed full power
> over the subject of marriage and divorce...[and] the
> Constitution delegated no authority to the Government of
> the United States on the subject of marriage and
> divorce." <u>Haddock v. Haddock</u>, 201 U.S. 562, 525 (1906);
> see also <u>In re Burrus</u>, 136 U.S. 586, 593-594 (1890)("The
> whole subject of the domestic relations of husband and
> wife, parent and child, belongs to the laws of the States
> and not to the laws of the United States").

<u>Id.</u> at 2691 (alterations in original).  Justice Kennedy further

instructs:

> The significance of state responsibilities for the
> definition and regulation of marriage dates to the
> Nation's beginning; for "when the Constitution was
> adopted the common understanding was that the domestic
> relations of husband and wife and parent and child were
> matters reserved to the States." <u>Ohio ex rel. Popovici
> v. Agler</u>, 280 U.S. 379, 383-384 (1930).  Marriage laws

vary in some respects from State to State....

<u>Id.</u>  And, finally, he emphasizes why:

> The responsibility of the States for the regulation of
> domestic relations is an important indicator of the
> substantial societal impact the State's classifications
> have in the daily lives and customs of its people.

<u>Id.</u> at 2693.  <u>Windsor</u> leaves unchanged "the concerns for state
diversity and sovereignty."  <u>See id.</u> at 2697 (Roberts, C.J.,
dissenting).

But even apart from <u>Windsor</u>, plaintiffs seek to justify the
application of heightened scrutiny because, they argue, Louisiana's
laws and Constitution discriminate based on sexual orientation.
They fail, however, to recognize that neither the Supreme Court nor
the Fifth Circuit has ever before defined sexual orientation as a
protected class, despite opportunities to do so.  <u>See, e.g.,</u>
<u>Windsor</u>, 133 S. Ct. 2675 (majority opinion); <u>Romer</u>, 517 U.S. 620;
<u>Johnson v. Johnson</u>, 385 F.3d 503 (5th Cir. 2004); <u>see also</u> <u>Baskin</u>
<u>v. Bogan</u>, Nos. 14-355, 14-404 & 14-406, 2014 U.S. Dist. LEXIS
86114, at *34-*35 (S.D. Ind. June 25, 2014)(7th Circuit precedent
mandates application of rational basis scrutiny to the issue of
sexual orientation discrimination).  Admittedly, other federal
courts throughout the country have spoken as if they were deciding
the issue by discovering, at best, unclear case models on the more
demanding standard of review.  Or, in the name of rational basis,

they have at times applied the more exacting review standards. This Court would be more circumspect.  In light of still-binding precedent, this Court declines to fashion a new suspect class.  To do so would distort precedent and demean the democratic process. As Justice Powell stressed and cautioned in <u>Furman v. Georgia</u> in a robust dissent regarding state-adopted capital punishment:

> Less measurable, but certainly of no less significance, is the shattering effect this collection of views has on the root principles of stare decisis, federalism, judicial restraint and--most importantly--separation of powers....In a democracy the first indicator of the public's attitude must always be found in the legislative judgments of the people's chosen representatives.

408 U.S. 238, 417, 436-37 (1972).  Of the role of the courts in such matters:

> First, where as here, the language of the applicable provision provides great leeway and where the underlying social policies are felt to be of vital importance, the temptation to read personal preference into the Constitution is understandably great....But it is not the business of this Court to pronounce policy.  It must observe a fastidious regard for limitations on its own power, and this precludes the Court giving effect to its own notions of what is wise or politic.

<u>Id.</u> at 431, 433.  And his emphatic trust in deference for free and open debate in a democracy resonates:

> It seems to me that the sweeping judicial action undertaken today reflects a basic lack of faith and confidence in the democratic process.

<u>Id.</u> at 464-65.

13

Plaintiffs also add that they suffer discrimination based on gender.  Plaintiffs, as do most other federal courts confronted with these issues, equate this case with <u>Loving v. Virginia</u>, 388 U.S. 1, 8 (1967), where the Supreme Court rightly condemned racial discrimination even though Virginia's antimiscegenation marriage laws equally applied to both races.  Plaintiffs' argument betrays itself.  Heightened scrutiny was warranted in <u>Loving</u> because the Fourteenth Amendment expressly condemns racial discrimination as a constitutional evil; in short, the Constitution specifically bans differentiation based on race.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Bishop v. Smith</u>, Nos. 14-5003 & 14-5006, 2014 U.S. App. LEXIS 13733, at *145 (10th Cir. July 18, 2014)(Kelly, J., concurring in part and dissenting in part)("Oklahoma's efforts to retain its definition of marriage are benign, and very much unlike race-based restrictions on marriage invalidated in <u>Loving v. Virginia</u>." (citation omitted)).  Even ignoring the obvious difference between this case and <u>Loving</u>, no analogy can defeat the plain reality that Louisiana's laws apply evenhandedly to both genders--whether between two men or two women.  Same-sex marriage is not recognized in Louisiana and is reasonably anchored to the democratic process.  The Court is therefore satisfied that rational basis applies.  <u>See</u> <u>also</u> <u>Bostic v. Schaefer</u>, Nos. 14-1167, 14-1169 & 14-1173, 2014 U.S. App. LEXIS 14298, at *92 (4th Cir. July 28, 2014)(Niemeyer, J., dissenting).

14

B.

So, is there even any rational basis for Louisiana's resistance to recognize same-sex marriages entered into in other states, or to authorize same-sex marriages in Louisiana? Plaintiffs contend not, and conclude that Louisiana's laws and Constitution can only be supported by a hateful animus. Defendants rejoin that the laws serve a central state interest of linking children to an intact family formed by their biological parents. Of even more consequence, in this Court's judgment, defendants assert a legitimate state interest in safeguarding that fundamental social change, in this instance, is better cultivated through democratic consensus. This Court agrees.[9]

_____

[9] The Court acknowledges that its decision runs counter to all but two other federal court decisions. See Merritt v. Attorney Gen., No. 13-215, 2013 WL 6044329 (M.D. La. Nov. 14, 2013); Sevcik v. Sandoval, 911 F. Supp. 2d 996 (D. Nev. 2012). But see Bostic v. Schaefer, Nos. 14-1167, 14-1169 & 14-1173, 2014 U.S. App. LEXIS 14298 (4th Cir. July 28, 2014); Bishop v. Smith, Nos. 14-5003 & 14-5006, 2014 U.S. App. LEXIS 13733 (10th Cir. July 18, 2014); Kitchen v. Hebert, No. 13-4178, 2014 U.S. App. LEXIS 11935 (10th Cir. June 25, 2014); Brenner v. Scott, Nos. 14-107 & 14-138, 2014 U.S. Dist. LEXIS 116684 (N.D. Fl. Aug. 21, 2014); Burns v. Hickenlooper, No. 14-1817, 2014 U.S. Dist. LEXIS 100894 (D. Colo. July 23, 2014); Love v. Beshear, No. 13-750, 2014 U.S. Dist. LEXIS 89119 (W.D. Ky. July 1, 2014); Baskin v. Bogan, Nos. 14-355, 14-404 & 14-406, 2014 U.S. Dist. LEXIS 86114 (S.D. Ind. June 25, 2014); Wolf v. Walker, No. 14-64, 2014 U.S. Dist. LEXIS 77125 (W.D. Wis. June 6, 2014); Whitewood v. Wolf, No. 13-1861, 2014 U.S. Dist. LEXIS 68771 (M.D. Pa. May 20, 2014); Geiger v. Kitzhaber, Nos. 13-1834 & 13-2256, 2014 U.S. Dist. LEXIS 68171 (D. Or. May 19, 2014); Latta v. Otter, No. 13-482, 2014 U.S. Dist. LEXIS 66417 (D. Idaho May 13, 2014); DeBoer v. Snyder, 973 F. Supp. 2d 757 (E.D. Mich. 2014); Tanco v. Haslam, No. 13-1159, 2014 U.S. Dist. LEXIS 33463 (M.D. Tenn. March 14, 2014); De Leon v. Perry, 975 F. Supp. 2d 632 (W.D. Tex. 2014); Lee v. Orr, No. 13-8719, 2014 U.S. Dist. LEXIS 21620 (N.D. Ill.

Louisiana's laws and Constitution are directly related to achieving marriage's historically preeminent purpose of linking children to their biological parents.  Louisiana's regime pays respect to the democratic process; to vigorous debate.  To predictable controversy, of course.  The fact that marriage has many differing, even perhaps unproved dimensions, does not render Louisiana's decision irrational.  Nor does the opinion of a set of social scientists (ardently disputed by many others, it should be noted) that other associative forms may be equally stable, or the view that such judgments vilify a group (even though one finds them in a majority of the states, but not in all states).[10]  Even the fact that the state's precepts work to one group's disadvantage does not mandate that they serve no rational basis.  See Romer, 517 U.S. at 632.  The Court is persuaded that a meaning of what is marriage that has endured in history for thousands of years, and prevails in a majority of states today, is not universally irrational on the constitutional grid.  See Kimel, 528 U.S. at 84;

---

Feb. 21, 2014); McGee v. Cole, No. 13-24068, 2014 U.S. Dist. LEXIS 10864 (S.D. W. Va. Jan. 29, 2014).  But cf. Bishop, 2014 U.S. App. LEXIS 13733, at *148 (Kelly, J., concurring in part and dissenting in part)("Absent a fundamental right, traditional rational basis equal protection principles should apply, and apparently as a majority of this panel believes, the Plaintiffs cannot prevail on that basis.").

[10]  This Court does not enter the dispute of which "science" on this issue is correct.  The contentious debate in social science literature about what is "marriage" in today's world does not drive or inform the Court's decision.

16

Sevcik v. Sandoval, 911 F. Supp. 2d 996, 1014 (D. Nev. 2012).
(Shortly before Windsor, the district court in Sevcik adopted
arguments by Nevada that closely mirror Louisiana's submissions).

The Court also hesitates with the notion that this state's
choice could only be inspired by hate and intolerance.  Louisiana
unquestionably respected "a statewide deliberative process that
allowed its citizens to discuss and weigh arguments for and against
same-sex marriage."  See Windsor, 133 S. Ct. at 2689.  All sides
for and against grappled with this solemn issue.  The Court
declines to assign an illicit motive on the basis of this record,
as have also two federal appellate judges as well.[11]

Windsor  repeatedly  and  emphatically  reaffirmed  the

---

[11]  In his concurrence in the recent case of Bishop v. Smith,
Nos. 14-5003 & 14-5006, 2014 U.S. App. LEXIS 13733, *93-*133 (10th
Cir. July 18, 2014), Judge Holmes also declined to agree that state
laws limiting same-sex marriage suffer from unconstitutional
animus.  Judge Holmes, in a very careful opinion, explained that a
finding of animus generally requires some structural aberration in
the law at issue, like the imposition of wide-ranging and novel
deprivations upon the disfavored group or deviation from the
historical territory of the sovereign simply to eliminate
privileges that the disfavored group might otherwise enjoy.  Id. at
*106.  Judge Holmes offered Romer as an example of the former, and
Windsor of the latter, but distinguished the same-sex marriage ban
cases because of the stark absence of any structural irregularity.
Id. at *133.  Judge Holmes reasoned that Oklahoma's prohibition was
neither as far reaching as the amendment in Romer nor a departure
from traditional sovereign roles like DOMA was in Windsor.   Id.
This Court agrees entirely with Judge Holmes on this point and
concludes the animus doctrine is inapplicable here.  To reach a
contrary result, it would be necessary to "stretch to accommodate
changing societal norms."  See Bostic v. Schaefer, Nos. 14-1167,
14-1169 & 14-1173, 2014 U.S. App. LEXIS 14298, at *43 (4th Cir. July
28, 2014).

longstanding principle that the authority to regulate the subject of domestic relations belongs to the states, subject to indistinct future constitutional guarantees that in <u>Windsor</u> were, by its expressed limits, left open and rather inexact. <u>Id.</u> at 2691, 2692, 2693, 2696. Although opinions about same-sex marriage will understandably vary among the states, and other states in free and open debate will and have chosen differently, that does not mandate that Louisiana has overstepped its sovereign authority. <u>See id.</u> at 2692. Because this Court concludes that Louisiana's laws are rationally related to its legitimate state interests, as defendants plausibly focus, they do not offend plaintiffs' rights to Equal Protection.[12]

C.

The parties also seek summary judgment on Due Process Clause grounds. The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This protection has been viewed as having both procedural and substantive components when state action is challenged. As the Fifth Circuit has observed:

---

[12] This Court finds common cause with Justice Powell's cautionary injunction in <u>Furman v. Georgia</u> about judicial action that "reflects a basic lack of faith and confidence in the democratic process." 408 U.S. at 464-65.

18

>       Procedural due process promotes fairness in government
>       decisions "by requiring the government to follow
>       appropriate procedures when its agents decide 'to deprive
>       any person of life, liberty, or property.'" <u>Daniels v.
>       Williams</u>, 474 U.S. 327, 331 (1986).  Substantive due
>       process, "by barring certain government actions
>       regardless of the fairness of the procedures used to
>       implement them, [ ] serves to prevent government power
>       from being 'used for purposes of oppression.'" <u>Id.</u>

<u>The John Corp. v. The City of Houston</u>, 214 F.3d 573, 577 (5th Cir. 2000)(additional citation omitted).

The substantive component of due process, which plaintiffs count on here, protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." <u>Palko v. Connecticut</u>, 302 U.S. 319, 325-36 (1937). "Fundamental rights protected by substantive due process are protected from certain state actions regardless of what procedures the state uses." <u>Doe v. Moore</u>, 410 F.3d 1337, 1343 (11th Cir. 2005)(citing the prominent decision in <u>Washington v. Glucksberg</u>, 521 U.S. 702, 721 (1997)).  And such fundamental rights have been held to include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." <u>Glucksberg</u>, 521 U.S. at 720 (citations omitted).  The Supreme Court has, however, "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." <u>Id.</u> (internal quotation marks and

citation omitted).   There exists then, a central notion that anchors the doctrine of substantive due process: the indispensable presence of a fundamental right.

To establish a substantive due process violation, the aggrieved person must describe the infringed right with particularity and must establish it as "deeply rooted in this Nation's history and tradition." <u>Malagon de Fuentes v. Gonzales</u>, 462 F.3d 498, 505 (5th Cir. 2006)(internal quotation marks and citations omitted).   If a right is so "deeply rooted" as to be fundamental at its core, a more exacting scrutiny is required; if not, the Court applies the less demanding rational basis review. <u>Id.</u>

Plaintiffs fervently insist that Louisiana's laws and Constitution violate their right to substantive due process by depriving them of the fundamental right to marry.   Plaintiffs argue that Louisiana substantially burdens what they envision as their fundamental right to marry and that strict scrutiny is the standard of review to guide this Court.   Defendants counter, however, that there is no fundamental right to same-sex marriage and that rational basis review is appropriate.   Defendants correctly point to <u>Washington v. Glucksberg</u>, 521 U.S. at 721, which mandates that plaintiffs provide a "careful description" of the asserted fundamental right to succeed on a substantive due process challenge.   The Court agrees that <u>Glucksberg</u> requires a "careful

description," which, here, means that plaintiffs must specifically assert a fundamental right to same-sex marriage.[13]

No authority dictates, and plaintiffs do not contend, that same-sex marriage is anchored to history or tradition.[14] The concept of same-sex marriage is "a new perspective, a new insight,"

_____

[13] The cases invoked by plaintiffs, including <u>Turner v. Safely</u>, 482 U.S. 78 (1987), <u>Zablocki v. Redhail</u>, 434 U.S. 374 (1978), and <u>Loving</u>, 388 U.S. 1, do not relieve them of their obligation to carefully describe the fundamental right at issue here. Although a procession of federal courts accepted similar arguments, that trinity of Supreme Court cases does not support the proposition that marriage is a fundamental right guaranteed to everyone without limitation; indeed, each case involved marriages between one man and one woman. <u>See</u> <u>Zablocki</u>, 434 U.S. at 386 ("By affirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to strict scrutiny."). Defendants aptly note that it could not be maintained that the states violate a general fundamental right to marry when they restrict marriages between minors, first cousins, or more than two people, for example. In a case such as this, the plaintiffs necessarily assert an interest apart from and beyond the historic and traditional right to marry. Even plaintiffs admit that such unions would have unacceptable "significant societal harms."

[14] Defendants point to <u>Baker v. Nelson</u>, 409 U.S. 810 (1972), in support of the proposition that there is no Supreme Court precedent for a fundamental right to marry someone of the same sex. In <u>Baker v. Nelson</u>, the Supreme Court summarily rejected "for want of a substantial federal question" the claim that the Constitution requires a state to authorize same-sex marriage. Defendants point out that <u>Baker</u> was decided five years after <u>Loving</u>. Unlike the defendants in many of the other same-sex marriage cases before other federal courts, however, defendants here do not contend that <u>Baker</u> forecloses this Court's review or mandates the disposition of this case. <u>See also</u> <u>Merritt v. Attorney Gen.</u>, No. 13-215, 2013 WL 6044329, at *2 (M.D. La. Nov. 14, 2013)(citing <u>Baker</u> for the proposition that the Constitution does not require states to permit same-sex marriage). The Court need not enter the differing contentions about the viability of <u>Baker v. Nelson</u>.

nonexistent and even inconceivable until very recently.  <u>Windsor</u>,
133 S. Ct. at 2689.  Many states have democratically chosen to
recognize same-sex marriage.  But until recent years, it had no
place at all in this nation's history and tradition.  Public
attitude might be becoming more diverse, but any right to same-sex
marriage is not yet so entrenched as to be fundamental.  <u>See</u>
<u>Malagon</u>, 462 F.3d at 505.  There is simply no fundamental right,
historically or traditionally, to same-sex marriage.[15]

     With no fundamental right at stake,[16] the Court again reviews
under rational basis.  The Court has already held that Louisiana's

-------------------------------------------

     [15]  This Court is not the first to reach this conclusion, even
post-<u>Windsor</u>.  <u>See</u> <u>Love v. Beshear</u>, No. 13-750, 2014 U.S. Dist.
LEXIS 89119, at *18 (W.D. Ky. July 1, 2014)("If the inquiry here is
viewed as a contours-of-the-right question, holding that the
fundamental right to marry encompasses same-sex marriage would be
a dramatic step that the Supreme Court has not yet indicated a
willingness to take."); <u>see</u> <u>also</u> <u>Bostic v. Schaefer</u>, Nos. 14-1167,
14-1169 & 14-1173, 2014 U.S. App. LEXIS 14298, at *92 (4th Cir. July
28, 2014)(Niemeyer, J., dissenting)("At bottom, the fundamental
right to marriage does not include a right to same-sex marriage.");
<u>Bishop v. Smith</u>, Nos. 14-5003 & 14-5006, 2014 U.S. App. LEXIS
13733, *147-*148 (10th Cir. July 18, 2014)(Kelly J., concurring in
part and dissenting in part)("Removing gender complementarity from
the historical definition of marriage is simply contrary to the
careful analysis prescribed by the Supreme Court when it comes to
substantive due process.").

     [16]  Plaintiffs also summarily allege violations of their
fundamental rights to remain married and to parental authority, but
these claims fail for the same reason.  The Court notes, however,
that other federal district court opinions post-<u>Windsor</u> have
favored same-sex marriages under all standards of review.  <u>See,</u>
<u>e.g.</u>, <u>Kitchen v. Herbert</u>, No. 13-217, 2013 U.S. Dist. LEXIS 179331
(D. Utah Dec. 20, 2013), <u>aff'd</u>, No. 13-4178, 2014 U.S. App. LEXIS
11935 (10th Cir. June 25, 2014); <u>Wolf v. Walker</u>, No. 14-64, 2014
U.S. Dist. LEXIS 77125 (W.D. Wis. June 6, 2014); <u>Whitewood v. Wolf</u>,
13-1861, 2014 U.S. Dist. LEXIS 68771 (M.D. Pa. May 20, 2014).

law and Constitution survive under a rational basis review.
Although plaintiffs maintain that the laws are improperly grounded
only in tradition and moral objection, defendants offer a credible,
and convincing, rational basis to the contrary.  See Heller v. Doe,
509 U.S. 312, 319-20 (1993).

Although plaintiffs would fashion a modern constitutional
construct and place side by side this case to Lawrence v. Texas,
539 U.S. 558 (2003), in which the Supreme Court held that Texas'
antisodomy statute violated substantive due process, the Court in
Lawrence specifically found that the Texas law furthered no
legitimate state interest sufficient to justify its intrusion on
the right to privacy.  Id. at 578.  This Court is persuaded that
Louisiana has a legitimate interest...whether obsolete in the
opinion of some, or not, in the opinion of others...in linking
children to an intact family formed by their two biological
parents, as specifically underscored by Justice Kennedy in Windsor.
And the Court is not persuaded that Lawrence, a right to privacy
model, provides any support for a substantive due process liberty
to same-sex marriage.  The Court finds it helpful to call attention
that Lawrence, by its own terms, did "not involve whether the
government must give formal recognition to any relationship that
homosexual persons seek to enter." Id.; see also id. at 585 (O'
Connor, J., concurring)("Texas cannot assert any legitimate state
interest here, such as national security or preserving the

<u>traditional institution of marriage</u>.  Unlike the moral disapproval of same-sex relations--the asserted interest in this case--other reasons exist to promote the institution of marriage beyond mere moral disapproval of an excluded group." (emphasis added)).

D.

Both sides also seek summary judgment on plaintiffs' claim that Louisiana Department of Revenue Information Bulletin No. 13-024 violates their First Amendment rights.  The First Amendment to the United States Constitution declares that "Congress shall make no law...abridging the freedom of speech."  U.S. Const. amend. I.  "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." <u>United States v. Stevens</u>, 559 U.S. 460, 468 (2010)(internal quotation marks and citation omitted).  And the First Amendment also means that the government cannot compel a person to speak or to parrot a favored viewpoint. <u>Wooley v. Maynard</u>, 430 U.S. 705, 714 (1977)("We begin with the proposition that the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all."); <u>W. Va. State Bd. of Educ. v. Barnette</u>, 319 U.S. 624, 642 (1943)("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion or other matters of

24

opinion or force citizens to confess by word or act their faith therein."). In the context of compelled speech, courts must discern whether a law "regulates conduct, not speech"; only infringements of speech, and not conduct, warrant First Amendment protection. Rumsfeld v. Forum for Academic & Inst. Rights, 547 U.S. 47, 60 (2006)(distinguishing regulation of what someone "must do" from "what they may or may not say" (emphasis in original)).

Bulletin No. 13-024 requires same-sex couples who are lawfully married in other states to nevertheless describe that they are of single status on their Louisiana state income tax returns. Plaintiffs say that compels speech. Defendants answer that the targeted bulletin merely prescribes conduct. They add that the required conduct is necessary to an essential government function, collecting state taxes. They stress helpfully that the Fifth Circuit recently agreed with the Eighth Circuit that the required disclosure of information on a tax form is simply not compelled speech under the First Amendment. See United States v. Arnold, 740 F.3d 1032, 1035 (5th Cir. 2014)("'There is no right to refrain from speaking when essential operations of government require it for the preservation of an orderly society....'" (quoting United States v. Sindel, 53 F.3d 874, 878 (8th Cir. 1995)).

The Court is satisfied that Bulletin No. 13-024 does not contravene the First Amendment; that the disclosure requirement regulates conduct, not speech. See Rumsfeld, 547 U.S. at 60; Arnold, 740 F.3d at 1034-35. Despite plaintiffs' contentions to

25

the contrary, the bulletin has nothing to do with forcing plaintiffs to disclaim their "deep spiritual and emotional belief in the inviolability of their marriages," but, rather, it simply requires plaintiffs to provide the government with information necessary for the purpose of state tax collection. See Sindel, 53 F.3d at 878.   Taking plaintiffs' argument to its logical conclusion, any state policy with which one disagrees could constitute compelled speech.   The Court declines to endorse that shapeless result.

III.

This Court has arduously studied the volley of nationally orchestrated court rulings against states whose voters chose in free and open elections, whose legislatures, after a robust, even fractious debate and exchange of competing, vigorously differing views, listened to their citizens regarding the harshly divisive and passionate issue on same-sex marriage.   The federal court decisions thus far exemplify a pageant of empathy; decisions impelled by a response of innate pathos.   Courts that, in the words of Justice Scalia in a different context in Bond v. United States, 134 S. Ct. 2077, 2094 (2014)(concurring opinion), appear to have assumed the mantle of a legislative body.   In fact Judge Niemeyer in his "linguistic manipulation" dissent in Bostic v. Schaefer puts it even more candidly:

> This analysis is fundamentally flawed because it fails to take into account that the "marriage" that has long been recognized by the Supreme Court as a fundamental right is

26

distinct from the newly purposed relationship of a "same-sex marriage."  And this failure is even more pronounced by the majority's acknowledgment that same-sex marriage is a new notion that has not been recognized for "most of our country's history."  Moreover, the majority fails to explain how this new notion became incorporated into the traditional definition of marriage <u>except by linguistic manipulation</u>.

Nos. 14-1167, 14-1169 & 14-1173, 2014 U.S. App. LEXIS 14298, at *71-*72 (4th Cir. July 28, 2014)(emphasis added)(citation omitted).[17]

It would no doubt be celebrated to be in the company of the near-unanimity of the many other federal courts that have spoken to this pressing issue, if this Court were confident in the belief that those cases provide a correct guide.

Clearly, many other courts will have an opportunity to take up the issue of same-sex marriage; courts of appeals and, at some point, the U.S. Supreme Court.  The decision of this Court is but one studied decision among many.  Our Fifth Circuit has not yet spoken.

The depth of passion inherent in the issues before this Court defies definition.  That federal courts[18] thus far have joined in

---

[17] One case, pre-<u>Windsor</u> but rather close in time, <u>Sevcik v. Sandoval</u>, 911 F. Supp. 2d 996 (D. Nev. 2012), from Nevada, stands apart from the decisions descriptively spawned by <u>Windsor</u> and the contests that followed throughout the nation.  Plaintiffs say little, if anything, about <u>Sevcik</u>. <u>See also Merritt v. Attorney Gen.</u>, No. 13-215, 2013 WL 6044329 (M.D. La. Nov. 14, 2013).

[18] The Tenth Circuit, in a split decision, has recently spoken.  <u>Kitchen v. Herbert</u>, No. 13-4178, 2014 U.S. App. LEXIS 11935 (10th Cir. June 25, 2014). As has the Fourth Circuit.  <u>Bostic v. Schaefer</u>, Nos. 14-1167, 14-1169 & 14-1173, 2014 U.S. App. LEXIS 14298 (4th Cir. July 28, 2014).

the hopeful chorus that the tide is turning seems ardent and is an arguably popular, indeed, poignant, outcome (whether or not credibly constitutionally driven).  Perhaps, in the wake of today's blurry notion of evolving understanding, the result is ordained.  Perhaps in a new established point of view, marriage will be reduced to contract law, and, by contract, anyone will be able to claim marriage.  Perhaps that is the next frontier, the next phase of some "evolving understanding of equality," where what is marriage will be explored.  And as plaintiffs vigorously remind, there have been embattled times when the federal judiciary properly inserted itself to correct a wrong in our society.  But that is an incomplete answer to today's social issue.  When a federal court is obliged to confront a constitutional struggle over what is marriage, a singularly pivotal issue, the consequence of outcomes, intended or otherwise, seems an equally compelling part of the equation.  It seems unjust to ignore.  And so, inconvenient questions persist.  For example, must the states permit or recognize a marriage between an aunt and niece? Aunt and nephew? Brother/brother? Father and child?  May minors marry?  Must marriage be limited to only two people?  What about a transgender spouse? Is such a union same-gender or male-female?  All such unions would undeniably be equally committed to love and caring for one another, just like the plaintiffs.[19]

---

[19]  In the words of the Fourth Circuit: "Civil marriage is one of the cornerstones of our way of life.  It allows individuals to

Plaintiffs' counsel was unable to answer such kinds of questions; the only hesitant response given was that such unions would result in "significant societal harms" that the states could indeed regulate.  But not same-gender unions.  This Court is powerless to be indifferent to the unknown and possibly imprudent consequences of such a decision.  A decision for which there remains the arena of democratic debate.  Free and open and probing debate.  Indeed, fractious debate.  The Court remains drawn to the forceful and prophetic circumspection expressed by Justice Powell, and turns the spotlight again not only on his dissent in <u>Furman v. Georgia</u>, 408 U.S. 238, 414 (1972), but also to Judge Kelly in his dissent in the recent Tenth Circuit decision in <u>Kitchen v. Herbert</u>, No. 13-4178, 2014 U.S. App. LEXIS 11935 (10th Cir. June 25, 2014). Their words lead this Court today and ought not be slighted:

> [W]here, as here, the language of the applicable provision provides great leeway and where the underlying social policies are felt to be of vital importance, the temptation to read personal preference into the Constitution is understandably great....But it is not the business of this Court to pronounce policy.  It must observe a fastidious regard for limitations on its own power, and this precludes the Court's giving effect to its own notions of what is wise or politic.

<u>Furman</u>, 408 U.S. at 431, 433.

---

celebrate and publicly declare their intentions to form lifelong partnerships, which provide unparalleled intimacy, companionship, emotional support, and security." <u>Bostic</u>, 2014 U.S. App. LEXIS 14298, at *67.  <u>But</u> <u>see</u> <u>id.</u> at *86-*87 (Niemeyer, J., dissenting)("To now define the previously recognized fundamental right to 'marriage' as a concept that includes the new notion of 'same-sex marriage' amounts to a dictionary jurisprudence, which defines terms as convenient to attain an end.").

> [O]n this issue we should defer.  To be sure, the
> constant refrain in these cases has been that the States'
> justifications are not advanced by excluding same-gender
> couples from marriage.  But that is a matter of opinion;
> any "improvement" on the classification should be left to
> the state political process.

Kitchen, 2014 U.S. App. LEXIS 11935, at *146.  And, of we judges as

philosopher-kings:

> Though the Plaintiffs would weigh the interests of the
> State differently and discount the procreation, child-
> rearing, and caution rationales, that prerogative belongs
> to the electorate and their representatives....We should
> resist the temptation to become philosopher-kings,
> imposing our views under the guise of constitutional
> interpretation of the Fourteenth Amendment.

Id. at *149-*150.  Heeding those cautions, it is not for this Court

to resolve the wisdom of same-sex marriage.[20]  The nation is witness

---

[20]   Windsor offers no obstacle to this point, which the Supreme
Court even more recently reaffirmed in Schuette v. Coalition to
Defend Affirmative Action, 134 S. Ct. 1623 (2014).  In Schuette,
the Court held that a Michigan constitutional amendment preventing
the use of race-based preferences as part of the admissions process
for state universities did not violate the Equal Protection Clause
of the Fourteenth Amendment.  Justice Kennedy, the author of
Windsor, writing for the Court, emphasized that the question before
the Court was "not the permissibility of race-conscious admissions
policies under the Constitution but whether, and in what manner,
voters in the States may choose to prohibit consideration of racial
preferences in governmental decisions."  Id. at 1630.  In other
words, the question was whether "the courts [may or] may not
disempower the voters from choosing which path to follow."  Id. at
1635.  The Supreme Court held not.  It reasoned: "This case is not
about how the debate about racial preferences should be resolved.
It is about who may resolve it.  There is no authority in the
Constitution of the United States or in this Court's precedents for
the Judiciary to set aside Michigan laws that commit this policy
determination to the voters."  Id. at 1638.  This case shares
striking similarities with Schuette. Just as in Schuette, this case
involves "[d]eliberative debate on sensitive issues [that] all too
often may shade into rancor."  Id.  And so just like the Supreme
Court very recently held, this Court agrees "that does not justify
removing certain court-determined issues from the voters' reach.

to a strong conversation about what is marriage.  The central question that must first be asked, is what is the fairest forum for the answer?  A new right may or may not be affirmed by the democratic process.  "Perhaps someday same-gender marriage will become part of this country's history and tradition, but that is not a choice this court should make."  Id. at *133.  As Judge Niemeyer bluntly wrote in his insightful dissent in Bostic:

> Because there is no fundamental right to same-sex marriage and there are rational reasons for not recognizing it, just as there are rational reasons for recognizing it, I conclude that we, the Third Branch, must allow the States to enact legislation on the subject in accordance with their political processes.  The U.S. Constitution does not, in my judgment, restrict the States' policy choices on this issue.  If given the choice, some States will surely recognize same-sex marriage and some will surely not.  But that is, to be sure, the beauty of federalism.

2014 U.S. App. LEXIS 14298, at *109.  Federalism is not extinct. Federalism remains a vibrant and essential component of our nation's constitutional structure.  See Windsor, 133 S. Ct. at 2697 (Roberts, C.J., dissenting)("[B]ut a State's definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations with respect to the protection of offspring, property interests, and the enforcement of marital responsibilities." (internal quotation marks and citations omitted)).

For all of these reasons, the Court finds that Louisiana's

---

Democracy does not presume that some subjects are either too divisive or too profound for public debate."  Id.

definition of marriage as between one man and one woman and the limitation on recognition of same-sex marriages permitted by law in other states found in Article XII, Section 15 of the Louisiana Constitution and article 3520(B) of the Louisiana Civil Code do not infringe the guarantees of the Equal Protection and Due Process Clauses of the United States Constitution.   The record reveals no material dispute: the defendants have shown that Louisiana's decision to neither permit nor recognize same-sex marriage, formed in the arena of the democratic process, is supported by a rational basis.[21]   The Court further finds that plaintiffs have failed to establish a genuine dispute regarding a First Amendment violation on this record.   Accordingly, plaintiffs' motion for summary judgment is DENIED and defendants' motion for summary judgment is GRANTED.

New Orleans, Louisiana, September 3, 2014.

MARTIN C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[21]   The public contradictions and heated disputes among the community of social scientists, clergy, politicians, and thinkers about what is marriage confirms and clearly sends the message that the state has a legitimate interest, a rational basis, in addressing the meaning of marriage.